UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JORGE R. MATEO,

                    Plaintiff**,**        **MEMORANDUM & ORDER**
                                   12-CV-6160 (DRH)(GRB)

     v.

THE COUNTY OF SUFFOLK,

                    Defendant.
------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiff:**
**CAMPANELLI & ASSOCIATES, P.C.**
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
By: David A. Antwork, Esq.

**For the Defendant:**
**DENNIS M. BROWN**
**Suffolk County Attorney**
H. Lee Dennison Building
P.O. Box 6100
100 Veterans Memorial Highway
Hauppauge, NY 11788
By: Christopher M. Gatto, Esq.
     Assistant County Attorney

**HURLEY, Senior District Judge**:

      Plaintiff Jorge R. Mateo ("Plaintiff") filed the present action against defendant County of

Suffolk ("Defendant" or "County") pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations

of his constitutional rights. Specifically, Plaintiff asserts a first count for violation of his

procedural due process rights under the Fourteenth Amendment, a second count for violation of

his substantive due process rights under the Fifth and Fourteenth Amendments, and a third count

seeking declaratory and injunctive relief. Presently before the Court are Defendant's motion to

dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1)

and 12(b)(6), and Plaintiff's motion for summary judgment pursuant to Rule 56 on the issue of the County's liability on the procedural due process claim. For the reasons stated below, both motions are granted in part and denied in part.

## BACKGROUND

The following summary of the facts is taken from the Verified Amended Complaint.

### *The Seizure of Plaintiff's Vehicle*

Plaintiff, a resident of Suffolk County, New York, owned a 2010 Nissan Infiniti. (Am. Compl. ¶¶ 6, 8.) On February 4, 2011, Plaintiff's vehicle was seized by Defendant "pursuant to a [driving while intoxicated ("DWI")] seizure program," which permitted Defendant to seize and retain motor vehicles incidental to DWI arrests, and to subject the vehicles to civil forfeiture as "instrumentalities of a crime." (*Id.* ¶ 9 (internal quotation marks omitted).)

Defendant conducted a post-deprivation hearing on June 21, 2011 to address the retention of Plaintiff's vehicle. (*Id.* at ¶¶ 19, 73.) At the conclusion of the retention hearing, "the hearing officer directed that the County retain possession of [Plaintiff's] vehicle based upon a finding that the 'owner/operator has not established a hardship for return of the vehicle.' " (*Id.* at ¶ 19.) In addition, a hearing representative told the Plaintiff that he would face great storage fees or a civil lawsuit with the County if he did not surrender to the County his title to the vehicle. (*Id.* at ¶ 22.) Although Plaintiff refused to surrender the title to his vehicle to the County, the County did not file a lawsuit; however, it did retain Plaintiff's vehicle. (*Id.* at ¶ 23.) After retaining Plaintiff's vehicle for two years, and despite Plaintiff's ownership of the vehicle, the County transferred possession of Plaintiff's vehicle to a secured lienholder, Chase Auto Finance. (Am. Compl. at ¶¶ 29, 74.) Said transfer was performed without any notice to Plaintiff, and resulted in

additional costs to Plaintiff in the form of storage, towing and/or repossession fees.  (*Id.* at ¶ 29, 77.)

### The County's Retention Hearing Policies and Procedures

The assistant county attorneys and hearing officers take the position at retention hearings that the County's burden is only to establish probable cause for the underlying DWI arrest, and, upon the County's satisfying such burden, the County may retain possession of the seized vehicle.  (*Id.* at ¶ 42.)   This standard has been employed by the County in "case[] after case." (*Id.* at ¶ 43.)  Indeed, Plaintiff asserts that thirty-three transcripts of retention hearings reflect that the hearing officers do not require the County to establish that it is "likely to succeed on the merits of a forfeiture action," that it is necessary to retain the vehicle so as prevent its removal from the jurisdiction, destruction, or sale, and that "nothing short of retention [will] preserve the County's interests while a forfeiture action [i]s pending."  (*Id.* at ¶ 52.)

The hearing officers either have been trained or permitted to act "as affirmative advocates for the County," rather than as neutral hearing officers.  (*Id.* at ¶ 55.)  For instance, the hearing officers order the vehicle owners to execute General Releases in favor of Defendant, "as a condition precedent to the release of *any* owner's respective vehicle."  (Am. Compl. at ¶¶ 56-58.)

Moreover, in situations where a secured creditor possesses a lien against a seized vehicle, the County notifies the lienholder that it has seized the vehicle, and offers to release the vehicle to the lienholder upon payment of all outstanding storage fees, which, as discussed above, the County did in Plaintiff's case.  (*Id.* at ¶¶ 71, 73, 74.)

Defendant has and continues systematically to carry out its policies and procedures, including its custom, practice and policy of requiring the County only to show probable cause for a DWI stop and arrest to justify the continued retention of a seized vehicle.  (*Id.* at ¶¶ 79, 80.)  In

addition, it is the County and hearing officer's policy at post-deprivation hearings to require the vehicle owner to prove necessity or hardship in order to prevent the County's continued retention of the vehicle, thereby shifting the burden of proof to the vehicle owner. (*Id.* at ¶ 81.) It also has been and is Defendant's policy to fail to train its attorneys and hearing officers to require, or, alternatively, to train its attorneys and hearing officers not to require, that the County prove: its likelihood of success on the merits of the forfeiture action; that retention of the vehicle is needed to prevent its sale, removal from the jurisdiction or destruction; and that nothing other than retention will adequately preserve the County's interests during the pendency of the forfeiture action. (*Id.* at ¶¶ 83, 84.)

## DISCUSSION

### I.   *Legal Framework under Krimstock*

The gravamen of Plaintiff's complaint is that Defendant failed to abide by the legal dictates of the Second Circuit in *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) ("*Krimstock I*") and the *Krimstock* line of cases. In *Krimstock I*, the Second Circuit addressed a challenge to the constitutionality of New York City's Civil Administrative Code, N.Y.C.Code § 14-140, which permitted the City to seize motor vehicles following the arrests of drivers accused of driving while intoxicated or committing any other crimes for which vehicles could be used as instrumentalities of the crimes. *Krimstock I*, 306 F.3d at 43-44. Upon determining that the statute was constitutionally infirm because it permitted the City to retain a vehicle for months or even years after a warrantless seizure without providing a prompt hearing before neutral fact-finder, *id.* at 48, the Second Circuit ordered the City to provide the claimants with "a prompt post-seizure retention hearing, with adequate notice, for motor vehicles seized as instrumentalities of crime pursuant to N.Y.C.Code § 14-140(b)." *Id.* at 68-69. While refraining

from dictating "a specific form for the prompt retention hearing," the Second Circuit held that, "at a minimum, the hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure." *Id.* at 69. The Circuit stated that, if the City is unable to establish probable cause for the initial seizure, or provide post-seizure evidence to support the probable validity of continued deprivation, the vehicle must be released during the pendency of the civil and criminal proceedings. *Id.* The Circuit noted that "[w]hile initial seizure of a vehicle serves the constructive purpose of keeping an individual from driving in an inebriated condition, that purpose often loses its basis in urgency once the individual has regained sobriety"; however, the Circuit also noted that "[a] claimant's proven history of persistent drunkenness or repeated DWI violations . . . might justify a fact-finder in denying release of the vehicle *pendent lite*." *Id.* at 66 & n.28. Finally, the Second Circuit determined that due process is "satisfied by an initial testing of the merits of the City's case," and "the retention hearing will allow the court to consider whether less drastic measures than continued impoundment, such as a bond or restraining order, would protect the City's interest in the allegedly forfeitable vehicle during the pendency of the proceedings." *Krimstock I*, 306 F.3d at 70.

On remand, the district court "fashioned what is now known as a '*Krimstock* hearing.' " *Krimstock v. Kelly*, 506 F. Supp. 2d 249, 251 (S.D.N.Y. 2007). The '*Krimstock* hearing' requires the municipality

> to prove, by a preponderance of the evidence, that a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the [municipality] would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action. The Second Circuit affirmed these procedures to the extent they governed vehicles seized as an "instrumentality of a crime."

*Id.* at 252 (citing *Jones v. Kelly*, 378 F.3d 198, 204 (2d Cir. 2004)). "A neutral magistrate must decide those issues by a statement of findings on the record, or by a written statement to be made a matter of record." *Fasciana v. Cnty. of Suffolk*, 996 F. Supp. 2d 174, 179 (E.D.N.Y. 2014) (citations and internal quotation marks omitted). In addition, if the municipality cannot satisfy its burden on all three *Krimstock* elements, the municipality must release the vehicle. *Id.* (citations omitted).

The New York Court of Appeals also addressed this issue when considering the constitutionality of Nassau County's civil forfeiture statute. *Cnty. of Nassau v. Canavan*, 1 N.Y.3d 134, 137 (2003). The Court of Appeals concluded that "due process requires that a prompt post-seizure retention hearing before a neutral magistrate be afforded, with adequate notice, to all defendants whose cars are seized and held for possible forfeiture," and that, "[a]t such a hearing, the County must establish that probable cause existed for the defendant's initial warrantless arrest, that it is likely to succeed on the merits of the forfeiture action, and that retention is necessary to preserve the vehicle from destruction or sale during the pendency of the proceeding." *Id.* at 144-45 (footnote and citation omitted).

Notably, the standards established in the *Krimstock* line of cases and in *Canavan* have been addressed on several occasions by courts in this district in the context of challenges to the post-seizure retention hearing procedures employed by Defendant. *See, e.g.*, *Fasciana*, 996 F. Supp. 2d 174; *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215 (E.D.N.Y. 2014); *Ferrari v. Cnty. of Suffolk*, 2013 WL 4017022 (E.D.N.Y. Aug. 6, 2013) ("*Ferrari II*"); *Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) ("*Ferrari I*"); *Boyle v. Cnty. of Suffolk*, 2010 WL 4340627 (E.D.N.Y. Oct. 19, 2010).

With this legal framework in mind, the Court proceeds to address the parties' respective motions.

## II.    *Defendant's Motion to Dismiss*

### A.    *Legal Standard: Rule 12(b)(1)*

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010).  "On a Rule 12(b)(1) motion, the court may consider matters outside the pleadings, including affidavits, documents, and testimony if necessary." *Tsanganea v. City Univ. of N.Y.*, 2008 WL 4054426, at *3 (S.D.N.Y. Aug. 28, 2008) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), report and recommendation adopted, 2008 WL 4548857 (S.D.N.Y. Oct. 8, 2008).

### B.    *Legal Standard: Rule 12(b)(6)*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (footnote omitted) (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for a court's deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

> standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" (citation and internal quotation marks omitted)).

### C. *Defendant's Arguments*

#### 1. *Plaintiff's Procedural Due Process Claim*

"A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." *Reyes*, 995 F. Supp. 2d at 228. The first step in analyzing a procedural due process claim is to determine whether the plaintiff possessed a "protected liberty or property interest." *Fasciana*, 996 F. Supp. 2d at 181 (citation and internal quotation marks omitted); *accord Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). It is only when such a right is established that the Court may turn to a discussion of whether there has been a deprivation of that right without due process. *See Thompson*, 490 U.S. at 460; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972). Here, there is no dispute that Plaintiff had a protected property interest in his vehicle. Hence, the Court will proceed to address whether Plaintiff has adequately alleged that he was deprived of his property interest without due process.

Defendant argues that Plaintiff's procedural due process claim fails because Plaintiff received a hearing which addressed "an 'initial testing' of the merits of the County's case" and "whether continued impoundment was the appropriate remedy to protect the County's interest in the vehicle." (Def.'s Mem. in Support of Mot. to Dismiss at 15.) According to Defendant, its presentation of the following evidence satisfied its burden of establishing that the continued retention of Plaintiff's vehicle was warranted: (i) "Plaintiff, while operating a 2010 Infiniti without a valid driver's license, failed to maintain a traffic lane, while intoxicated"; (ii) "Plaintiff was previously convicted of driving while intoxicated on January 14, 2005"; (iii) "Plaintiff was also previously convicted of driving without a license on May 20, 2008 and June 30, 2008"; and (iv) "[t]he vehicle operated by Plaintiff was registered and titled in Plaintiff's name." (*Id.* at 15-16.) This evidence of Plaintiff's history of repeated DWI violations and driving without a license, Defendant argues, established that continued retention of Plaintiff's vehicle was necessary to prevent Plaintiff from using the vehicle for drunk driving again during the pendency of the proceedings. (*Id.* at 16.) Moreover, Defendant asserts that the magistrate agreed with the County that, based upon the evidence presented by the County, no alternative method to retention would suffice. (*Id.*) The magistrate determined that Plaintiff had failed to establish that he would suffer sufficient hardship if the vehicle were not returned to him, because he was unable to show that he needed the vehicle for transportation to work. (*Id.* at 16-17.) Defendant also asserts that Plaintiff did not establish that the vehicle should be released to his mother-in-law, because his mother-in-law was not a titled or registered owner of the vehicle and she had another vehicle that she could use in its place. (*Id.* at 17.) Lastly, Defendant asserts that Plaintiff's failure to challenge the retention hearing determination in an Article 78 proceeding precludes his asserting a procedural due process claim in federal court. (Def.'s Mem. in Support

of Mot. to Dismiss at 17-19.)

In opposition, Plaintiff asserts that under the Second Circuit's holding in *Krimstock I* and the Suffolk County Code Law ("SCCL"), the County had the burden of establishing that probable cause existed for Defendant's arrest, that the County was likely to succeed on the merits in the forfeiture action, and that no method less restrictive than retention, such as the issuance of a restraining order, posting of a bond, or use of an interlock device, could adequately protect the County's interest in Plaintiff's vehicle. (Pl.'s Mem. in Opp'n to Mot. to Dismiss at 7-8.) According to Plaintiff, the County did not meet this burden because it merely introduced the above-described documents into evidence and then rested its case. (*Id.* at 9.) In addition, Plaintiff argues that the hearing officer failed to make the necessary *Krimstock* findings, and inappropriately shifted the burden to Plaintiff to prove hardship. (*Id.* at 10.)

Here, the Amended Complaint states that "the County and the hearing officer presiding over [the retention hearing] failed to address, much less establish, the criteria articulated in *Krimstock*" and the SCCL. (Am. Compl. ¶¶ 16, 20.) While Plaintiff alleges that the statutory authority for Defendant's right to seize his vehicle is SCCL § 270 *et seq.* (Am. Compl. ¶ 10), Defendant states that SCCL § 420 *et seq.*, formerly § 270 *et seq.*, is the relevant statutory authority (Def.'s Mem. in Support of Mot. to Dismiss at 14). Nevertheless, both statutes require a determination that probable cause existed for the plaintiff's arrest, that the County is likely to succeed on the merits in the forfeiture action, and that retention of the vehicle is required to preserve the County's interest and that no less restrictive method can better protect the County's interest. *See Ferrari I*, 790 F. Supp. 2d at 40 (stating that SCCL § 270-26(B)(1) "requires the neutral Magistrate to determine whether probable cause existed for the defendant's warrantless arrest, whether the County is likely to succeed on the merits of the forfeiture action, whether

retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings" (internal quotation marks omitted)); SCCL § 420-6(B) (providing that "[w]hen a hearing is held, the neutral magistrate shall review the documents supporting the arrest and any other relevant documents and take any testimony to determine whether the seizing agency has sustained its burden of pro[ving]" that "probable cause existed for the defendant's warrantless arrest, [that] the County is likely to succeed on the merits of the forfeiture action, [that] retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and [that no] other measures would better protect the County's interest during the proceedings"). *See also Fasciana*, 996 F. Supp. 2d at 179 n.4 (stating that Section 270-26 and Section 420-6 "contain[] identical language").

While it is clear that the County must establish, and the magistrate must make a finding of, the *Krimstock* elements, the statutes do not clearly require the magistrate to address each *Krimstock* element in his determination or in a statement of findings. Therefore, the question is whether the magistrate's determination in this case, which found that the "County ha[d] proven its case to retain [the] 2010 Infiniti" (Exh. I to Declaration of Christopher M. Gatto, dated March 29, 2013 ("Gatto Decl.")), but did not explicitly address each *Krimstock* element, violated Plaintiff's procedural due process rights.[1]  The court's decision in *Ferrari I* indicates that it does.

---

[1] In support of its motion to dismiss, the County has produced several exhibits, including, *inter alia*: (1) the transcript of Plaintiff's retention hearing; (2) the felony complaint and simplified informations charging Plaintiff with driving his vehicle while intoxicated and with a prior conviction within the past ten years; (3) an alcohol/drug influence report; (4) a report of Plaintiff's refusal to submit to a chemical test; (5) a Certificate of Disposition reflecting that Plaintiff pled guilty in 2005 to driving while intoxicated and failure to stay in a single lane; (6) an Abstract of Driving Record for Plaintiff; (7) records from the New York State Department of Motor Vehicles for Plaintiff's vehicle registration and title; (8) the Notice of Seizure and Hearing regarding the seizure of Plaintiff's vehicle; (9) the hearing officer's retention hearing determination in Plaintiff's case; and (10) Suffolk County Code § 420-5, *et seq.  See* Exhs. A-J to Gatto Decl.  Since these documents were either incorporated by reference in the Amended Complaint, were in Plaintiff's possession, were known about and relied upon by Plaintiff in bringing suit, or constitute matters of which the Court may take judicial notice, the Court may consider them without converting

The court in *Ferrari I* observed that due process "requires . . . the hearing officer [to] decide [the *Krimstock* elements] by a statement of findings on the record, or by a written statement to be made a matter of record." *Ferrari I*, 790 F. Supp. 2d at 43 (footnote omitted) (citation and internal quotation marks omitted). Indeed, as the *Ferrari I* court noted, the Supreme Court has declared that a " 'decision maker should state the reasons for his determination and indicate the evidence he relied on.' " *Id.* at 43 n.10 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)). Consequently, the court in *Ferrari I* held that an allegation that the magistrate failed to issue a statement of findings which addressed all of the *Krimstock* elements supports a plaintiff's procedural due process claim. *Id.* at 43; *Ferrari II*, 2013 WL 4017022, at *7 (stating that "Justice DiNoto's failure to make findings on the record regarding *Krimstock's* second and third prongs . . . constitute[d] [a] violation[] of Plaintiff's right to procedural due process"); *see also Boyle*, 2010 WL 4340627, at *5 (finding that the hearing officer's failure to discuss all of the *Krimstock* elements in his written statement or to make a finding on the record which addressed all of the *Krimstock* elements constituted a procedural due process violation). Accordingly, Plaintiff's allegation in this case that the magistrate failed to address the *Krimstock* elements sufficiently states a procedural due process violation.

Having determined that Plaintiff has adequately pled a procedural due process cause of action, the Court will not address the County's additional arguments on this point other than to briefly examine the County's assertion that Plaintiff's failure to challenge the retention hearing determination in an Article 78 proceeding precludes him from asserting his procedural due process cause of action in this Court. Defendant's argument here fails for the same reason

---

the County's motion into a motion for summary judgment. *See Reyes*, 995 F. Supp. 2d at 220 (considering the defendant County's exhibits upon the County's motion to dismiss without converting the motion into a summary judgment motion because the documents were available to and known about by both parties).

discussed by other courts in this district, namely, that a plaintiff is not required to first commence an Article 78 proceeding if the due process violations were allegedly systemic rather than random. *See Ferrari II*, 2013 WL 4017022, at *8 ("Because the deprivation here is allegedly systemic, and not random, the availability of an Article 78 proceeding does not bar Plaintiff's claim."), *Reyes*, 995 F. Supp. 2d at 228 ("[B]ecause the Plaintiff here . . . alleges that the Defendant's procedural due process violations [were] systemic as opposed to random, the Court finds that the Plaintiff was not required to first initiate an Article 78 proceeding . . . ."); *Fasciana*, 996 F. Supp. 2d at 183 ("Plaintiff has alleged systemic violations and, accordingly, the availability of an Article 78 proceeding does not preclude Plaintiff's procedural due process claim."). In essence, while an Article 78 proceeding is an adequate vehicle to address "random, unauthorized state conduct," it is not an adequate procedural mechanism in cases where "the state system itself . . . destroys a complainant's property interest, by operation of law." *Ferrari II*, 2013 WL 4017022, at *8 (citations and internal quotation marks omitted).

In this case, Plaintiff has alleged systemic procedural due process violations by Defendant, as discussed more fully *infra*. Thus, Plaintiff's procedural due process claim is not dismissed.

### 2. *Plaintiff's Substantive Due Process Claim*

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.' " *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)); *accord Reyes*, 995 F. Supp. 2d at 230. The "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires [the court] to exercise the utmost

care whenever [the court is] asked to break new ground in this field." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citations and internal quotation marks omitted). "Recognized fundamental rights include those created by the Constitution, most rights enumerated in the Bill of Rights, and certain unenumerated rights, such as the right to privacy." *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1347 (S.D.Fla. 1998). In addition, liberty interests, such as "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience," are also protected by substantive due process. *Id.* (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Here, however, " 'Plaintiff's property interest in his vehicle is not the type of fundamental right subject to substantive due process protections.' " *Reyes*, 995 F. Supp. 2d at 230 (quoting *Ferrari II*, 2013 WL 4017022, at *9). Accordingly, Plaintiff's substantive due process claim is dismissed.

### 3.     *Monell Liability*

A municipality may not be held liable under § 1983 on a *respondeat superior* theory of liability for its employees' alleged constitutional violations. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691 (1978); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995). A municipal entity may be liable only if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decision making channels." *Monell,* 436 U.S. at 690–91. Therefore,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to

> represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Coon v. Town of Springfield, Vt.,* 404 F.3d 683, 686 (2d Cir. 2005) (quoting *Monell,* 436 U.S. at

694).

The existence of a municipal policy or custom may be established in any of the following

four ways. A plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the
> municipality; (2) actions taken or decisions made by municipal
> officials with final decision making authority, which caused the
> alleged violation of plaintiff's civil rights; (3) a practice so persistent
> and widespread that it constitutes a custom of which constructive
> knowledge can be implied on the part of the policymaking officials;
> or (4) a failure by policymakers to properly train or supervise their
> subordinates, amounting to 'deliberate indifference' to the rights of
> those who come in contact with the municipal employees.

*Williams v. City of Mount Vernon,* 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v.*

*City of Yonkers,* 924 F. Supp. 8, 12 (S.D.N.Y. 1996)); *see also Bonds v. Suffolk Cnty. Sheriff's*

*Dep't,* 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (same).

Prior decisions by courts in this district, which have addressed motions to dismiss

complaints containing similar allegations as the allegations in the Amended Complaint, provide

useful guidance to the Court. In *Reyes,* the court quoted *Ferrari I* as stating:

> The plaintiff alleges that Suffolk County knowingly trains and/or deliberately
> permits, the hearing officers who preside over retention hearings to deliberately
> and systematically refuse to comport with the requirements of Due Process or
> the Suffolk County Code. And, although the plaintiff does not plead much
> factual detail concerning Suffolk County's training programs, it is unlikely that
> a plaintiff would have information about the county's training programs or about
> the cause of the misconduct at the pleading stage. Thus, a plaintiff need only
> plead that the county's failure to train caused the constitutional violation in order
> to plead municipal liability.

*Reyes,* 995 F. Supp. 2d at 231 (quoting *Ferrari I,* 790 F. Supp. 2d at 45). In addition, the *Reyes*

court observed that the *Ferrari I* court found that the plaintiff's identification of two additional

instances in which the County's hearing officers allegedly failed to apply *Krimstock* supported the plaintiff's allegation of a widespread practice by the County of deliberately permitting its magistrates to violate *Krimstock*. *Id.* (citing *Ferrari I*, 790 F. Supp. 2d at 46). Thus, allegations of at least three instances in which the County knowingly trained or permitted its hearing officers deliberately and systematically to refuse to comply with due process, *Krimstock*, and SCCL requirements were found by the *Ferrari I* and *Reyes* courts adequately to allege *Monell* liability. *See Reyes*, 995 F. Supp. 2d at 231; *Ferrari I*, 790 F. Supp. 2d at 45-46.

In this case, the Amended Complaint contains allegations similar to those in *Ferrari I* and *Reyes*. For example, Plaintiff alleges: that "the defendant has deliberately and [willfully], continued to implement and maintain their constitutionally infirm practices of systematically continu[ing] to ignore the dictates laid out by the U.S. Court of Appeals for the Second Circuit in *Krimstock*, despite the fact that the defendant's agents are acutely aware of *Krimstock* and its mandates" (Am. Compl. ¶ 24); "[i]n direct defiance [of the district court's ruling in *Boyle*, 2010 WL 4340627], and *Krimstock*, the County, the Office of the Suffolk County Attorney, and the hearing officers who are appointed by the County to preside over vehicle retention hearings, [have] completely . . . ignored [the district court's] ruling [in *Boyle*], as well as the dictates of *Krimstock*[,] which [the *Boyle*] decision laid bare in perfectly clear detail" (Am. Compl. ¶ 26);[2] "the hearing officers who preside over the County's retention hearing[s] have been trained and/or permitted to act, not as *neutral* hearing officers, but as affirmative advocates for the County (*id.* ¶ 55); "the policies and practices described herein were the actual policies and practices of Suffolk

---

[2] As discussed in the decision *supra*, the court in *Boyle* found that the hearing officer's failure to discuss the *Krimstock* elements in his written statement or to make a finding on the record which addressed the *Krimstock* elements constituted a procedural due process violation. *Boyle*, 2010 WL 4340627, at *5. Thus, the *Boyle* decision establishes the hearing officers' obligations to address the *Krimstock* elements either in their determinations or in their statements of findings.

County, which were, and are, being systematically . . . carried out by the defendant County" (*id.* ¶ 79); "it has been, and remains . . . the custom, policy and practice of Suffolk County, and its hearing officers, . . . merely [to] require the County to show nothing more than probable cause for a stop and DWI arrest, upon the showing of which the Court routinely retains possession of seized vehicles and concomitantly deprive[s] their owners of the use and possession of same" (*id.* ¶ 80); "it has been, and remains . . . the policy of the defendant to train its [ ] County Attorneys and Judicial Hearing Officers to refuse to require the County to establish" the *Krimstock* and *Canavan* elements (*id.* ¶ 83); and "Suffolk County failed to train the Judicial Hearing Officers, who had been appointed by the County Executive, to require the County to establish" the *Krimstock* and *Canavan* elements (*id.* ¶ 84). In addition, Plaintiff identifies at least thirty-three other instances in which the County allegedly failed to satisfy *Krimstock's* due process requirements. (*See* Am. Compl. ¶¶ 50-54.) Thus, Plaintiff has sufficiently alleged a procedural due process violation resulting from the execution of a municipal policy or custom.

### 4.    *Declaratory and Injunctive Relief*

The County argues that Plaintiff's claim seeking injunctive relief should be dismissed because "Plaintiff has failed to allege irreparable harm." (Def.'s Mem. in Support of Mot. to Dismiss at 21.) In addition, the County argues that "Plaintiff does not have standing to seek prospective declaratory or injunctive relief." (*Id.*) Notably, however, Plaintiff has failed to address this portion of the County's motion to dismiss. Since Plaintiff has presented thorough arguments in opposition to dismissal of his other claims, but has failed to address in any manner the dismissal of his claim seeking injunctive and declaratory relief, the Court considers this claim abandoned by Plaintiff. *See McCalla v. SUNY Downstate Med. Ctr.*, 2006 WL 1662635, at *9 n.8 (E.D.N.Y. June 8, 2006) ("Plaintiff failed to oppose defendants' motions to dismiss plaintiff's

defamation claim, and for this reason alone, dismissal is warranted." (citing *Blouin ex rel. Estate of Pouliot*, 356 F.3d 348, 363 n.9 (2d Cir. 2004); *Lipton v. Cnty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); *Arbercheski v. Oracle Corp.*, 2005 WL 2290206, at *3 (S.D.N.Y. Sept. 19, 2005); Local Civ. Rule 7.1.)).

## III.  *Plaintiff's Motion for Summary Judgment*

### A.  *Summary Judgment Standard*

Summary judgment, pursuant to Rule 56, is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion that is properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material

facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

**B.** *Analysis*

Plaintiff argues that he is entitled to summary judgment on the issue of liability on the procedural due process claim because: "the County did not meet, and, more importantly, was not required to meet, its burden under *Krimstock*" at his retention hearing (Pl.'s Mem. in Support of SJ at 10); the "the County-appointed hearing officer did not apply the *Krimstock* test" in Plaintiff's case (*id.*); "the County-appointed hearing officers invariably failed to issue statements of findings that the three prongs of the *Krimstock* test were met by the County" (*id.* at 21); and

"the County has systematically failed to meet its burden under *Krimstock*" (*id.*). Thus, it is argued that, "[b]y refusing to release vehicles in cases where the County has failed to satisfy its *Krimstock* burdens, the County has been depriving, and continues to deprive vehicle owners[, including Plaintiff,] of their rights to due process." (*Id.* at 4.)[3]

In opposition, the County argues that Plaintiff's motion should be dismissed because he failed to comply with Local Civil Rule 56.1's requirement that he submit a statement of the undisputed, material facts, along with citation to admissible, supporting evidence. (Def.'s Mem. in Opp'n at 1.) However, upon the exercise of its discretion, the Court will overlook Plaintiff's failure to submit a Rule 56.1 statement in light of the fact that the County does not dispute the accuracy or validity of the evidence Plaintiff has produced to demonstrate that there are no genuine issues of material fact. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").[4]

Furthermore, the Court is unpersuaded by the County's additional argument that Plaintiff's motion for summary judgment is premature because discovery has not commenced given the County's failure to identify any evidence that it anticipates it would discover which would demonstrate a genuine issue of fact as to its liability on Plaintiff's procedural due process

---

[3] The Court notes that Plaintiff's motion for summary judgment refers to the Complaint filed on December 14, 2012 [Docket No. 1], rather than the Amended Complaint filed on February 11, 2013 [Docket No. 9], and his counsel's declaration, submitted in opposition to Defendant's motion to dismiss, annexes a copy of the Complaint rather than the Amended Complaint. *See* Exh. B to undated, sworn Declaration of David A. Antwork. Nevertheless, since the County has not argued that Plaintiff's mistaken reference to the Complaint rather than the Amended Complaint somehow precludes the Court from granting summary judgment in Plaintiff's favor, the Court will treat any reference in Plaintiff's summary judgment motion to the complaint as a reference to the Amended Complaint.

[4] The County also argues that although Plaintiff asserts that the doctrine of collateral estoppel should be applied in this case to prevent the County from relitigating certain issues in this case, as discussed in the decision *infra*, the Court declines to apply the doctrine of collateral estoppel. Moreover, the Court will not address the County's arguments pertaining to Plaintiff's substantive due process claim since that claim has been dismissed, as discussed in the decision *supra*.

claim. *See Trebor Sportswear Co., Inc. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 512 (2d Cir. 1989) (observing that a district court may deny a request for further discovery where the non-movant who opposes summary judgment on the basis of outstanding discovery "proffer[s] no persuasive basis for the district court to conclude that further discovery would yield proof [that shows the existence of a triable issue of fact]"). Thus, the Court will address each of Plaintiff's arguments in turn.

        **1.**     ***Whether the County Satisfied its Burden under Krimstock at the Retention Hearing***

As discussed *supra*, *Krimstock* and its progeny require the County

> to prove, by a preponderance of the evidence, that a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the [County] would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action.

*Krimstock*, 506 F. Supp. 2d at 252.

In this case, the County provided evidence at the retention hearing of (i) the "felony complaint"; (ii) "uniform traffic tickets"; (iii) "the Alcohol and Drug Influence Report"; (iv) "the Report of Refusal to submit to a chemical test"; (v) "a Certificate of Disposition"; (vi) "an abstract of driving record from the Department of Motor Vehicles"; (vii) "the registration and plate record"; (viii) "the vehicle title record"; and (ix) "the Notice of Seizure and Hearing." (Exh. G to undated, sworn Declaration of Andrew J. Campanelli ("Campanelli Decl."); *see also* Exhs. A-H to Gatto Decl.) Moreover, the Court notes that Defendant argued upon its motion to dismiss that this evidence established that: (i) "Plaintiff, while operating a 2010 Infiniti without a valid driver's license, failed to maintain a traffic lane, while intoxicated"; (ii) "Plaintiff was previously convicted of driving while intoxicated on January 14, 2005"; (iii) "Plaintiff was also previously convicted of driving without a license on May 20, 2008 and June 30, 2008"; and (iv)

"[t]he vehicle operated by Plaintiff was registered and titled in Plaintiff's name." (*See* Def.'s Mem. in Support of Mot. to Dismiss at 15-16.)

The Court disagrees with Plaintiff's suggestion that the County did not meet its *Krimstock* burden because it "merely place[d] standard arrest form documents into the record, and then rest[ed]." (Pl.'s Mem. in Support of SJ at 4.) On the contrary, if the evidence proffered by the County established each *Krimstock* element by a preponderance of the evidence, then the County satisfied its burden. *See, e.g., Boyle*, 2010 WL 4340627, at *3 (finding that "the stipulated exhibits more than sufficed to meet the County's burden on the first two *Krimstock* prongs").

Indeed, here, the evidence proffered by the County satisfied the first two *Krimstock* elements. According to the sworn felony complaint, the Defendant "operate[d] a motor vehicle while he was in an intoxicated condition," and the "Defendant was previously convicted[,] within the past ten years, of operating a motor vehicle while under the influence of alcohol or drugs." (Exh. B to Gatto Decl.) The report of Plaintiff's refusal to submit to a chemical test sets forth that the arresting officer "had reasonable grounds to make the arrest" based upon the Defendant's inability to "maintain a traffic lane while [driving]," and Defendant's "slurred speech, bloodshot and glassy eyes, lack of balance and a strong smell of an alcoholic beverage on his breath." (Exh. D to Gatto Decl.) Moreover, the Certificate of Disposition evidences that Defendant had previously pled guilty on January 14, 2005 to prior charges of DWI and failure to stay in a single lane (Exh. E to Gatto Decl.), and the abstract of Plaintiff's driving record reveals that Plaintiff also had two prior convictions for driving without a license (Exh. F to Gatto Decl.) Thus, "this evidence establishes by a preponderance of the evidence that Suffolk County had probable cause to arrest" Plaintiff, and that the County will likely succeed in the forfeiture

action, "especially in light of [Plaintiff's failure] to put forward *any* evidence in opposition." *Boyle*, 2010 WL 4340627, at *3 (finding that the exhibits containing sworn complaints that, *inter alia*, the plaintiff's "eyes were glassy and bloodshot, his breath smelled of an alcoholic beverage, his speech was slurred, he fumbled with his license and was unsteady while exiting the vehicle," a breath test record evidencing a blood alcohol level of .144%, and evidence of a prior DWI conviction sufficient to meet the County's burden on the first two *Krimstock* elements).

Less clear, however, is whether the evidence produced by the County at the hearing satisfied its burden as to the third prong of *Krimstock*, i.e., whether the County established, by a preponderance of the evidence, that it was necessary to retain Plaintiff's vehicle in order to preserve the vehicle for a judgment of forfeiture, and that no less restrictive means of preserving the vehicle would suffice. Interestingly, the court in *Ferrari I* recognized that "it could . . . be argued that *Krimstock* set forth another way for a municipality to justify retaining a vehicle," viz. " 'a claimant's proven history of persistent drunkenness or repeated DWI violations . . . might justify a fact-finder in denying release of the vehicle *pendente lite*.' " *Ferrari I*, 790 F. Supp. 2d at 40 (quoting *Krimstock I*, 306 F.3d at 67 n.28). The *Ferrari I* court then addressed the fact that *Krimstock* nevertheless did not incorporate this additional means of justifying retention of a vehicle, rather *Krimstock* "framed the municipality's 'need' and 'legitimate interests' as 'preserving the vehicle from destruction or sale during the pendency of the proceedings,' not as protecting the public from a habitually intoxicated driver, or precluding the car from being used as an instrumentality in further crimes." *Id.* (quoting *Krimstock I*, 306 F.3d at 67-68). In addition, the *Ferrari I* court observed that "New York's Court of Appeals has also recognized a potential government interest in protecting society from drunk drivers, but has also failed to incorporate that interest into its standard." *Id.* While the court in *Ferrari I* recognized that the

SCCL § 270–26(B)(1) "is worded a little better" in that it requires the hearing officer to determine "whether retention is necessary to preserve the vehicle from destruction or sale during the pendency of the forfeiture proceeding, and whether any other measures would better protect the County's interest during the proceedings" and, therefore, "speaks generally about protecting 'the County's interest,' without limiting that interest to protecting against destruction or sale," and, that the SCCL's recognition that an interlock device could protect the County's interest also "strongly suggest[s] that the Local Law understands the County's 'interest' as being broader than a property interest in the car's value, and extends to protecting the public from continued drunk driving, and/or the car from being used as an instrumentality in the crime of drunk driving," the court nevertheless concluded that the SCCL's standards cannot "trump" the *Krimstock* standard.

The *Ferrari I* court's analysis is relevant in this case because despite the County assertion that it "argued at the hearing . . . that no other means short of retention of the vehicle were sufficient to protect the County's interest in the vehicle[,] and that retention of the vehicle was necessary in order to protect the public from the vehicle being used as an instrumentality of a crime in the future" (Def.'s Reply in Support of Mot. to Dismiss at 3), a review of the hearing transcript reveals that the County asserted an additional argument at the retention hearing. In fact, the Assistant County Attorney argued at the retention hearing:

> The County feels that they must retain this vehicle in order to keep the vehicle in its current condition and in order to protect the public from [it] being used as an instrumentality of a similar crime in the future.
>
> In this situation, from the documents, Mr. Mateo was alleged to have been driving - - weaving, and not being able to maintain his lane of travel. There was a refusal to the chemical test. The County feels the best way to maintain the vehicle in its current condition, is for the County to retain the subject vehicle.

(Exh. G to Campanelli Decl. at 18:15-25; 19:2-5.)

In the Court's view, the County argued, albeit inferentially, that the Plaintiff's history of repeated DWI violations justified retention of the vehicle, not only to protect the public, but also to protect the County's interest in preserving the vehicle which could be damaged during a subsequent DWI incident involving the Plaintiff. Nevertheless, a similar argument was rejected in *Ferrari I* and *Ferrari II*. In *Ferrari II*, the court reasoned that, "[a]lthough [the Assistant County Attorney] did state at the hearing that she believed that, due to [the plaintiff's] driving record, vehicle retention was necessary to ensure its availability for a judgment of forfeiture, the County's burden was to establish that it was 'necessary' to retain [the plaintiff's] car by a preponderance of the evidence, not a preponderance of attorney argument." 2013 WL 4017022, at *8 (citations and internal quotation marks omitted); *see also Ferrari I*, 790 F. Supp. 2d at 42 ("At the strongest, the County argued that Ferrari might damage the vehicle through continued reckless or impaired driving[,] . . . [b]ut the County did not explain why a bond or a restraining order would not adequately protect its financial interest in the vehicle." (citation omitted)). Thus, it was found that the County's failure to produce evidence to establish that retention of the vehicle was necessary constituted a procedural due process violation. *Ferrari II*, 2013 WL 4017022, at *8. Similarly, here, the County failed to produce evidence that retention of the vehicle, rather than a less restrictive means, such as an interlock device, was necessary to preserve the County's interest in the vehicle. As a result, the County did not satisfy its burden on the third prong of *Krimstock*, and, consequently, violated Plaintiff's procedural due process rights.

**2.        *Whether the Hearing Officer Failed to Address the Krimstock Elements***

Here, the Court finds that Plaintiff has come forth with sufficient evidence to show that the County-appointed hearing officer failed to apply the *Krimstock* test in his case, and,

therefore, violated his procedural due process rights. The hearing officer's determination in Plaintiff's case merely stated:

> County has proven its case to retain 2010 Infiniti. Owner has established a hardship[--]balance of lease is owed. Owner does not work but supports 3 children. Person--co-surety paying the loan has another vehicle. Owner-operator has not established a sufficient hardship for return of vehicle.

(Exh. F to Campanelli Decl.) Similarly, the transcript of Plaintiff's retention hearing demonstrates that the hearing officer determined that the "County ha[d] proven its case to retain the 2005 Infinity," without addressing the *Krimstock* elements. (Exh. G to Campanelli Decl. at 19:14-18.) Thus, the evidence lacks any indication that the hearing officer considered each of the *Krimstock* elements. Moreover, assuming *arguendo* that the hearing officer considered the *Krimstock* elements in reaching his decision, his failure to address those elements in his determination or in a statement of findings on the record violated Plaintiff's procedural due process rights, as discussed above. Accordingly, Plaintiff has come forth with evidence that his procedural due process rights were violated by the hearing officer's failure to address the *Krimstock* elements in a statement of findings on the record.

### 3. *Monell Liability*

Having established that his procedural due process rights were violated by the County's failure to establish the *Krimstock* elements at the retention hearing, and the hearing officer's failure to address the *Krimstock* elements on the record, Plaintiff must establish Defendant's liability for said violations.[5]

---

[5] Although Plaintiff makes reference in his motion papers to an alleged procedural due process violation stemming from the hearing officer's shifting of the burden to him to establish hardship (see Pl.'s Mem. in Support of SJ at 3, 4, 6, 11), the Court will not address this issue because Plaintiff has failed to address the County's *Monell* liability for any such alleged violation in his motion. Similarly, while the Amended Complaint asserts that the County violated Plaintiff's procedural due process rights by transferring possession of his vehicle to a third party without his consent and without giving him prior notice (Am. Compl. ¶ 99), the Court notes that Plaintiff has not addressed this alleged procedural due process violation in his motion for summary judgment.

As discussed previously, *Monell* liability can be established by proving that the due process violations resulted from

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Williams,* 428 F. Supp. 2d at 159 (citation omitted).

In this case, Plaintiff argues that he has provided evidence of the County's "widespread practice of failing to meet its burden under *Krimstock*," and the "County-appointed hearing officers['] . . . fail[ure] to issue statements of findings that the three prongs of the *Krimstock* test were met by the County." (Pl.'s Mem. in Support of SJ at 21.) [6] With regard to the County-appointed hearing officers' alleged custom of failing to address the *Krimstock* factors in their determinations or statements of findings, Plaintiff has come forth with copies of twenty-five retention hearing determinations, issued between December 17, 2007 and September 20, 2012, by at least three different hearing officers, to show that the County-appointed hearing officers failed to address each of the *Krimstock* factors in those cases. (*See* Exh. Z to Campanelli Decl.) In addition, Plaintiff submits eighteen retention hearing transcripts to show that the hearing officers in those cases did not issue statements of findings addressing the County's satisfaction of each of the *Krimstock* elements. (*See* Exhs. H-Y to Campanelli Decl.) However, except in the case of two of the proffered determinations, Plaintiff did not provide the transcripts for the retention hearings which related to those determinations. Similarly, except in the case of two of

---

[6] Defendant does not dispute that the hearing officers were the County's employees or agents.

the retention hearing transcripts, Plaintiff did not provide the determinations which related to those retention hearing transcripts. Thus, without being able to examine both the retention hearing transcripts and their related determinations, "the Court cannot [conclusively] determine whether the hearing officer[s] made . . . [any] statement[s] of findings on the record." *Ferrari II*, 2013 WL 4017022, at *10. Hence, the Court cannot determine whether the hearing officers had a custom of failing to address the *Krimstock* factors.

Moreover, while Plaintiff asserts that the eighteen retention hearing transcripts also provide evidence of the County's alleged widespread practice of failing to meet its burden under *Krimstock*, the County argues that, because Plaintiff's hearing occurred on June 21, 2011, and his evidence primarily concerns hearings which transpired during the years 2007 through 2010, but does not concern any hearings that occurred during 2011 or 2012, he has "failed to establish as a matter of law that there [wa]s a widespread practice of the County failing to meets its burden under *Krimstock*." (Def.'s Mem. in Opp'n to SJ at 3.) The Court disagrees. It is axiomatic that the County's liability for any due process violation *caused* by its municipal custom is based upon a custom that existed *at* the time of the alleged violation, i.e., at the time of Plaintiff's retention hearing and the issuance of the hearing officer's determination on June 21, 2011. *See Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("[A] plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that *caused* the plaintiff's injury." (emphasis added)). The County fails to provide any legal support for its contention that Plaintiff must show that the County continued its illegal practice after Plaintiff's rights were violated on June 21, 2011 by way of transcripts of retention hearings that occurred after that date. While it is true that the hearing transcripts provided by Plaintiff in this case involve hearings which occurred primarily between April 23, 2007 and

October 7, 2010, with the exception of one hearing that occurred on February 7, 2013, the Court finds that these hearing transcripts provide sufficient evidence that, as of June 21, 2011, the County had a widespread practice of failing to establish by a preponderance of the evidence that retention was necessary, and, thus, failing to meet its burden under *Krimstock*.[7]  Indeed, it is noteworthy that the County does not dispute the accuracy of the retention hearing transcripts proffered by Plaintiff, nor does it offer any facts to show that there is a genuine issue as to whether the County had a policy or custom of failing to meet its burden under *Krimstock*. Accordingly, the Court finds that Plaintiff has established Defendant's liability on the procedural due process claim arising out of the County's failure to satisfy its burden at the retention hearing.

## CONCLUSION

For the reasons stated above, the County's motion to dismiss is granted as to Plaintiff's substantive due process claim and claim seeking a declaratory judgment and injunctive relief, and denied as to Plaintiff's procedural due process claim.  Plaintiff's motion for summary judgment is granted on the procedural due process claim arising out of the County's failure to satisfy its burden at the retention hearing, but is otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York
        October 23, 2014

_____/s/_____
Denis R. Hurley
United States Senior District Judge

---

[7] While Plaintiff offers eighteen retention hearing transcripts, annexed as Exhibits H through Y to the Campanelli Decl., to show that the County had a widespread practice of failing to meet its burden under *Krimstock*, the Court notes the transcripts annexed as Exhibits L, S and U indicate that the hearings in those cases were adjourned.  Thus, those transcripts do not show whether the County ultimately addressed and satisfied its burden under *Krimstock* in those cases.  Nevertheless, the other fifteen retention hearing transcripts demonstrate that, in each of those cases, the County failed to show by a preponderance of the evidence that it was necessary to retain the vehicles, and that no less restrictive method could better protect the County's interest.